UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **NASSAU MARITIME HOLDINGS DESIGNATED ACTIVITY CO** | **CASE NO. 2:20-CV-00355** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **M/V PACIFIC SKY, her engines, tackle, appurtenances, etc., *in rem*, and PACIFIC SKY NAVIGATION LTD., *in personam*** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM ORDER

Before the court is a Motion for Interlocutory Sale of Vessel [doc. 24] filed by plaintiff Nassau Maritime Holdings Designated Activity Company ("Nassau") under Rule E(9) of the Supplemental Rules for Admiralty or Maritime Claims & Asset Forfeiture Actions of the Federal Rules of Civil Procedure. Defendant Pacific Sky Navigation, Ltd. ("Pacific Sky") opposes the motion. Doc. 26.

### I.
### BACKGROUND

Nassau filed suit in this court on March 19, 2020, raising claims against the M/V PACIFIC SKY ("vessel") *in rem* and Pacific Sky, owner of the vessel, *in personam*. Doc. 1. Specifically, Nassau alleges the breach of a preferred ship mortgage and foreclosure of a maritime lien against the vessel, with about $119.37 million due in principal under the loan agreement and $4.87 million due in interest as of March 5, 2020.[1] *Id.* Pursuant to a

---

[1] According to Pacific Sky, the loan secures five vessels including the M/V PACIFIC SKY. Doc. 26, att. 1, p. 1. Nassau has arrested three of the other vessels in ports in South Africa, Malaysia, and China. *Id.*

court order, the vessel was arrested in this district on April 3, 2020. Doc. 12. Nassau now moves for the interlocutory sale of the vessel, arguing that all grounds for this relief under Rule E(9) are met, while Pacific Sky opposes the motion and argues that none of Rule E(9)'s criteria is satisfied. Doc. 26.

## II.
## LAW & APPLICATION

Under Rule E(9), interlocutory sale of a vessel is permitted upon application of a party, the marshal, or other person having custody of the vessel if: (1) the attached or arrested vessel is perishable or liable to deterioration, decay, or injury by being detained pending the action; (2) the expense of keeping the vessel is excessive or disproportionate; or (3) there is an unreasonable delay in securing release of the vessel. 28 U.S.C. S.R. E(9)(a)(i). The movant bears the burden of showing that at least one of these criteria is met. *Triton Container Int'l Ltd. v. Baltic Shipping Co.*, 1995 WL 217483, at *2 (E.D. La. Apr. 12, 1995). The motion is committed to the court's discretion. *Prosperity Bank v. Tom's Marine and Salvage, LLC*, 2020 WL 777294, at *4 (E.D. La. Feb. 18, 2020).

The M/V PACIFIC SKY has sat idle since it was arrested over two months ago. As Nassau points out, hurricane season has arrived and may expose ships moored here to peril. Pacific Sky provides a sworn declaration from its sole owner, however, in which he states that the vessel currently has a full crew onboard "performing all the necessary maintenance to make sure the vessel remains in good condition." Doc. 26, att. 1, p. 4. He also maintains

that this crew can move the vessel to a safe berth in the event of a hurricane.[2] *Id.* Finally, Pacific Sky argues that a third-party inspector could be appointed to monitor the vessel's maintenance. Nassau does not meet its burden under the first criterion, as it has provided no evidence contradicting these safeguards and showing a risk of deterioration or injury justifying the sale of the vessel.

Under the second factor, Nassau argues that the vessel requires excessive and ongoing custodial fees. To this end it shows that the expense of maintaining the vessel will be at least $75,000 to $85,000 per month, based on expenses including fuel, fresh water, and guards for the vessel.[3] Doc. 27, p. 5; *see* doc. 27, att. 1. It asserts that these costs are excessive in light of the vessel's current estimated value of $20–24 million. *See* doc. 26, att. 1, p. 2. Under the third factor, Nassau also argues that there has been an unreasonable delay because the vessel "was arrested over two months ago, and plaintiff has not produced any specific evidence showing a realistic possibility of refinancing or alternate security." Doc. 27, p. 6.

"Maintenance expenses of several thousand dollars per month, particularly where Defendant has made no attempt to answer Plaintiff's Complaint or secure the Vessel's release, are excessive and disproportionate." *Bartell Hotels v. S/L Talus*, ___ F.Supp.3d

---

[2] Nassau argues that "there is no evidence [this crew is] performing necessary maintenance" or receiving adequate supplies. Doc. 27, p. 3. It also raises concerns, based on a letter received from an attorney about a planned intervention by Thome Ship Management PTE, Ltd., that "there is information to indicate that the crew may not be getting paid." *Id.*; *see* doc. 27, att. 1, pp. 1–2. Nassau admits, however, that it has "no direct information" on the subject. Doc. 27, p. 3. The declaration cited above provides sufficient evidence that the crew is doing what is required at this point, and Nassau has provided nothing more than supposition to contradict it.

[3] Pacific Sky has argued that there is no evidence of what future costs are required, and that the vessel should not incur any additional fuel costs while under arrest. Doc. 26, pp. 9–10. In reply, however, Nassau shows that the vessel is using approximately six metric tons of fuel per day. Doc. 27, att. 1, p. 8. Based on the historically low fuel prices this quarter, the resulting expense will still be over $40,000 a month. *See id.* at 9.

___, 2020 WL 1849544, at *3 (S.D. Cal. Apr. 13, 2020). However, "[a] motion for interlocutory sale generally should not be granted unless the court has permitted defendants sufficient time to provide a bond to secure the vessel's release." *Vineyard Bank v. M/Y Elizabeth I*, 2009 WL 799304, at *2 (S.D. Cal. Mar. 23, 2009). Absent other considerations, defendants usually have at least four months to bond out a vessel. *Id.*

Thus far, the vessel has been under arrest for less than two and a half months. The expenses that have accrued at this rate are not excessive in light of the vessel's total value. Pacific Sky's owner declares that the company "is in the process and has been in the process of trying to obtain financing . . . since the first day of the arrest," and that he "believes in good faith that there is a good chance it will be able to post security" through certain surety companies he has contacted once he obtains more information from them. Doc. 26, att. 1, p. 2. Nassau maintains that Pacific Sky has had ample time to arrange financing, because it has known it was in arrears for several months. But this is not an adequate basis to shorten the time for securing a release bond, particularly in the middle of a global pandemic and economic downturn. Accordingly, Nassau does not carry its burden under this motion. It may reurge it, however, if a release bond is not secured within the next eight weeks or if other changes in circumstance arise that might alter the court's analysis.

## III.
## CONCLUSION

For the reasons set forth above, Nassau's Motion for Interlocutory Sale [doc. 24] is **DENIED**, without prejudice to Nassau's right to reassert it upon a showing of changed circumstances.

**THUS DONE AND SIGNED** in Chambers on this 15 day of June, 2020.

JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**