**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| NASSAU MARITIME HOLDINGS DESIGNATED ACTIVITY COMPANY<br>Plaintiff<br><br>VERSUS<br><br>M/V PACIFIC SKY, her engines, tackle, appurtenances, etc., *in rem*, and PACIFIC SKY NAVIGATION LTD. *in personam*<br>Defendants | CIVIL ACTION<br><br>NO.  2:20-CV-00355<br><br>JUDGE JAMES D. CAIN, JR.<br><br>MAGISTRATE JUDGE KAY |

**MEMORANDUM IN SUPPORT OF SECOND**
**MOTION FOR INTERLOCUTORY SALE OF VESSEL**

MAY IT PLEASE THE COURT:

NOW COMES plaintiff Nassau Maritime Holdings Designated Activity Company ("Nassau Maritime" or "Plaintiff"), through undersigned counsel, to submit this Memorandum in Support of its Second Motion for an Order directing the interlocutory sale of the M/V PACIFIC SKY (the "Vessel") pursuant to Rule E(9) of the Supplemental Rules for Admiralty or Maritime Claims & Asset Forfeiture Actions of the Federal Rules of Civil Procedure.

The M/V PACIFIC SKY was arrested on April 3, 2020 for non-payment of amounts owed under a foreign preferred ship mortgage. The Vessel Owner (hereinafter sometimes referred to as "Defendant" or "Borrower") has never denied owing the amount claimed by Plaintiff-movant, has not arranged to pay the amount due, and has not posted security for the release of the vessel in the nearly 6 months it has been under arrest.  Interlocutory sale is appropriate.

## I.    INTRODUCTION

This motion involves plaintiff Nassau Maritime's second request for an Order authorizing the sale of the Vessel pursuant to Rule E(9) so that the proceeds of the sale can be deposited into the registry of the Court to await further orders of the Court.

Nassau Maritime filed its first Motion for Interlocutory Sale on May 12, 2020 [Doc. 24]. This Court denied the motion on June 15, 2020, but specifically noted that the denial was without prejudice to the right to reassert it based upon a showing of changed circumstances [Doc. 31].

Circumstances have changed. Another 3 months have passed since the first Motion for sale was denied.  There has still been no payment of the overdue mortgage amounts or any proposal to post a bond or other security to stand in place of the vessel. The vessel has now been under arrest for almost 6 months. This is an unreasonable delay in posting security.

Custodial expenses have continued to accrue. In fact, the ship's manager, Thome Ship Management has now filed a motion to intervene to assert pre-arrest and post-arrest charges [Doc. 35].   Significantly, Thome alleges that post-arrest costs for crew wages, food, other necessaries and management fees are $4,961.00 per day, or almost $150,000 per month.  This is in addition to the $100,000 per month or more being incurred by plaintiff Nassau Maritime for fuel, substitute custodian fees, mandatory U.S. Marshal insurance fees, and other expenses.  This means total costs for the vessel while under arrest are nearly $3 million per year.  This is disproportionate to the value of the vessel.

Finally, plaintiff-movant recently learned that the vessel's Hull and Machinery insurance has been canceled due to non-payment of premiums. Defendant's failure to maintain Hull and Machinery coverage is a further breach of the loan agreement.  Although Plaintiff has taken out Port Risks insurance in order to protect the vessel against loss, that financial burden is being met

by Plaintiff and will further reduce the proceeds of sale that may be available to satisfy Defendant's debt. The failure to maintain required Hull and Machinery insurance is untenable during hurricane season in the Gulf of Mexico. This alone compels an expedited interlocutory sale of the vessel. The vessel has already been at risk due to several tropical storms and hurricanes, including catastrophic Hurricane Laura.

All grounds for interlocutory sale under Rule E(9) are present here – the vessel is subject to deterioration or decay as she sits idle under arrest; the costs associated with maintaining the Vessel during her arrest are unnecessarily reducing the amount of money that will be available to satisfy the judgment; and, there has been an unreasonable delay in obtaining the release of the property.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On March 19, 2020, Nassau Maritime filed its Verified Complaint against the Vessel, *in rem*, and Pacific Sky Navigation LTD (the "Owner"), *in personam*, alleging causes of action for breach of a preferred ship mortgage and foreclosure of a maritime lien against the Vessel. As stated therein, as of March 5, 2020, the amount due under the Loan Agreement was $119,366,178.14 in principal and $4,867,472.32 in interest, plus applicable default interest and costs and expenses of enforcement.

On April 3, 2020, Nassau Maritime effected the arrest of the Vessel pursuant to the order of this Honorable Court. The Vessel remains under arrest and neither her Owner nor any party claiming an interest in her has taken any visible steps to obtain her release.   The Owner/Borrower has never offered to post security or even shown that it has taken concrete steps to obtain security for the Release of the Vessel.

Counsel for the Vessel Owner have appeared in the litigation and have filed a Statement of Right or Interest (Doc. 18) and an Answer (Doc. 19), but have not made any visible efforts to

- 3 -

secure the release of the Vessel.  They have not moved to vacate the arrest, and they have not

even denied that they owe over $17 million to the plaintiff for the mortgage on PACIFIC SKY.

(Paragraph 4 of the Declaration of Mehmet Ali Umur, submitted by defendant Vessel Owner as

Doc 26-1, admits the debt.)

## III.    LAW AND ARGUMENT

Rule E(9) of the Supplemental Rules for Admiralty or Maritime Claims & Asset

Forfeiture Actions sets forth the criteria for the disposition of property and interlocutory sales as

follows:

> On application of a party… the court may order all or part of the
> property sold—with the sales proceeds, or as much of them as will
> satisfy the judgment, paid into court to await further orders of the
> court—if:
>
> (A) the attached or arrested property is perishable, or liable to
> deterioration, decay, or injury by being detained in custody
> pending the action;
>
> (B)     the expense of keeping the property is excessive or
> disproportionate; or
>
> (C)     there is an unreasonable delay in securing release of the
> property.

Fed. R. Civ. P., Supp. Admiralty Rule E(9)(a)(i).

The Fifth Circuit has held that to obtain an order for an interlocutory sale, lien holders

need show only the existence of one of the three criteria set forth in Rule (E)(9)(a)(i). *Merchants

Nat'l Bank v. Dredge General G.L. Gillespie*, 663 F.2d 1338, 1341 (5th Cir. 1981). All three

criteria have been met in this case.

### i.)      There has been an unreasonable delay in securing the release of the property

The Vessel Owner has not secured the release of the Vessel since its arrest on April 3,

2020. Sub-section (C) of Supplemental Admiralty Rule E(9)(a)(i) is met. While some courts

have indicated that a vessel must be under arrest for over four months before a sale should be

PD.29878206.1

ordered, other cases have allowed a sale after only 3 months. *Neptune Orient Lines v. Halla Merchant Marine Co.*, 1998 U.S. Dist. LEXIS 3745 (E.D.La. 1998); *Ferrous Financial Services Co. v. O/S Arctic Producer*, 567 F. Supp. 400 (W.D.Wa. 1983).  In this case, over 5 months have passed already, and 6 months or more will have passed before the court rules on this motion.

The Vessel Owner here has known for some time that it was in arrears on the loan payments. Paragraphs 8-11 of the declaration of Borrower's German law expert concede that loan payments have been overdue since March 2019. (Doc. 26-1) The vessel was arrested over 5 months ago, and Defendant has not produced any specific evidence showing a realistic possibility of refinancing or alternate security. There will be other delays, including time for publication, before the actual sale of the vessel is held. PACIFIC SKY interests will therefore have more time to secure financing or obtain security, and the sale can be postponed at any time before it occurs.  However, the fact that the vessel's Hull and Machinery insurance has been cancelled due to non-payment of premiums strongly suggests that Defendant lacks the financial wherewithal to secure the vessel's release.

**ii.)      The expense of keeping the property is excessive or disproportionate**

The expense of keeping the Vessel in custody is excessive and is unnecessarily eroding the amount of sale proceeds which will be available to satisfy the judgment in this case. Since the arrest of the Vessel on April 3, 2020, Nassau Maritime has been paying for bunkers (fuel oil) and other necessary *custodia legis* costs in order to maintain and preserve the Vessel during her arrest. Nassau Maritime has paid or incurred the following amounts or approximate amounts:

| 1. | Bunkers (marine gas oil) | $300,000.00 |
|----|--------------------------|-------------|
| 2. | Substitute custodian fees | 153,233.00[1] |

---

[1] Substitute custodian charges continue to accrue at approximately $25,000 per month.  Nassau Maritime has advised counsel for Owners that Nassau Maritime would be agreeable to appointing the Vessel's Master as substitute custodian so that the costs for the custodian could be terminated, but Owners have not agreed to such an arrangement and are therefore unnecessarily forcing further custodial costs to be incurred.

| 3. | Pilots and tugs for bunkering | 99,472.00 |
|----|-------------------------------|-----------|
| 4. | U.S. Marshal liability insurance ($160/day) | 28,800.00 |
| 5. | Freshwater | 40,800.00 |
| 6. | Launches, garbage disposal, fees for local agent services | 22,400.00 |
|    |                               | $644,705.00 |

Plaintiff's expenses for maintaining the vessel under arrest are approximately $100,000.00 per month or slightly more. (Copies of available supporting invoices and related records are attached *in globo* as Exhibit 1.)  As previously noted, the ship manager is claiming expenses of nearly $150,000.00 per month.  PACIFIC SKY interests may argue this is not excessive compared to their assumed valuation of the vessel of $20-$24 million; however, they concede economic conditions are depressed now and no one can predict the amount for which the vessel will sell at auction.

The expense of keeping the vessel (if intervenors alleged costs are true) will be $3 million or more per year.  In *Ferrous Financial Services Co. v. O/S Arctic Producer*, 567 F. Supp. 400 (W.D.Wa. 1983), the court found expenses of $166,000 per year were excessive compared to the mortgage of $3,142,877.  This is an "asset versus yearly expense ratio" of 18.93. Using a value for the PACIFIC SKY of $20,000,000 and expenses of $3 million per year results in an "asset versus yearly expense ratio" of only 6.

Because the Owner apparently will not secure release of the Vessel, every dollar spent to maintain custody of the Vessel is a dollar spent unnecessarily. Money spent unnecessarily in maintaining custody of the Vessel is by definition excessive. Criteria (B) of Supplemental Admiralty Rule E(9)9(a)(i) therefore is met.

PD.29878206.1

### iii.)     The property is subject to deterioration or injury

Finally, the Vessel is subject to deterioration or injury. She is idle. She is of steel construction, and therefore requires regular maintenance of her hull and machinery. By sitting idle in the salt waters of the Gulf of Mexico, the Vessel is susceptible to decay and deterioration. Of perhaps even greater concern in the Gulf of Mexico, hurricane season is underway and has already placed the vessel at significant risk.   Even worse, the vessel is now without hull insurance and Plaintiff has been forced to take steps to put alternative insurance in place in order to protect against possible loss of the vessel. Therefore, criteria (A) of Supplemental Admiralty Rule E(9)9(a)(i) also is met.

It is impossible to argue that a vessel in a saltwater environment is not subject to deterioration or decay. Vessels, as well as most other mechanical property, deteriorate or decay due to the mere passage of time. Exposure to a saltwater environment, especially in a warm climate, exacerbates these problems.  Numerous courts have noted this.

In *Merchants Nat'l Bank v. Dredge General G. L. Gillespie*, 488 F. Supp. 1302 (W.D.La. 1980), the esteemed Judge Edwin F. Hunter, Jr. of this Court noted that vessel machinery requires maintenance, and steel vessels will deteriorate if not properly chipped and painted.  Id. at 1308.  See also, *Neptune Orient Lines v. Halla Merchant Marine Co.*, 1998 U.S. Dist. LEXIS 3745 (E.D.La. 1998) at *21.

Rule E (9)(a)(i)(A) refers not only to deterioration or decay, but to injury to the property under arrest.  We are now in the midst of hurricane season. Already, the vessel had to depart the jurisdiction on an emergency basis and at the urging of the U.S. Coast Guard in order to avoid the dangers of Hurricane Laura. Other hurricanes have been near misses.  The vessel could be lost or significantly damaged in a hurricane.  This strongly militates in favor of a prompt sale of the vessel.

## IV.    INTERLOCUTORY SALE IS WARRANTED

Plaintiff Nassau Maritime reiterates that all three grounds for an interlocutory sale under Rule E(9) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture actions are decisively met, and only one is necessary.

Notably, Defendant does not deny the substantial debt it owes Plaintiff under the loan agreement in question. Defendant essentially admits it owes at least $17,642,090 with respect to the vessel PACIFIC SKY (see paragraph 4 of the Declaration of Mehmet Ali Umur, Doc. 26-1).

Defendant furthermore does not deny it has been unable to post security for the release of the vessel or obtain refinancing since April 3, 2020.  In the Declaration of Mehmet Ali Umur (Doc 26-1), Defendant claimed to be working toward this, but provided no clear or recent evidence of its efforts. Defendant claims its efforts were complicated by the inability of its auditors (KPMG) to supply certain information, but provided no correspondence or documentation from the auditors regarding this. Almost four months have passed since Defendant made these representations, and no progress is evident.

Defendant contends Nassau Maritime has no valid claim under the loan agreement.  If Defendant truly believed so, it would have filed a Motion to Vacate the arrest of the vessel. Defendant has now had nearly 6 months to file a Motion to Vacate, but has not done so. Certainly, if the issue were clear, a Motion to Vacate would have been filed rather than undertaking the alleged (and apparently futile) efforts to secure refinancing or alternate security.

With regard to security, Defendant previously contended it was speaking with sureties such as International Sureties in New Orleans. This Court is certainly aware that for uninsured matters such as this, a surety company will require countersecurity in a substantial amount, equal to or nearly equal to the amount of the bond provided by the surety. If Defendant could provide such countersecurity, then it could likely post security to release the vessel.

The Court will further note that Defendant essentially conceded at pp. 6-7 of its earlier Memorandum in Opposition (Doc. 26) that the total loan balance is now approximately $125 million and that four of the five vessels financed under the loan have now been arrested for non-payment. All of this makes it very unlikely that Defendant will be able to obtain and post alternate security such as a bond. Moreover, if defendant had firm leads on refinancing, further details of that should have been provided to the Court in addition to the bare-bones, self-serving, and vague Declaration of Mehmet Ali Umur, the owner of the defendant company.

**Nassau Should be Allowed to Credit Bid**

Nassau Maritime further requests that, in connection with the sale of the Vessel, it be permitted to bid on credit up to the sum owed by Defendants on the Preferred Ship Mortgage, which now totals at least $119,366,178.14, plus interest, costs, and attorneys' fees presently estimated to total at least $4,867,472.32 and increasing, upon presentation to the U.S. Marshal of an accounting of the unpaid balance.

PACIFIC SKY interests may contend that Nassau Maritime should not be permitted to make a credit bid because there is a dispute regarding whether Nassau Maritime has a valid claim to enforce the loan agreement under German law. As noted earlier, if this were clear, PACIFIC SKY interests should have filed a motion to vacate the arrest, which they have not done. Moreover, any reasonable person would have to ask how a German bank and a sophisticated lender dealing with a loan of over $100 million could overlook the provisions of German law which defendant's legal expert contends apply and render the loan invalid.

Nassau Maritime attaches as Exhibit 2 the legal opinion of its German lawyers with the international firm of Reed Smith LLP.  They explain exactly why Nassau Maritime has a valid claim to enforce the loan agreement in question. They contradict the contention of Defendant's legal expert that there was an "<u>implied</u> exclusion of assignment."  This argument is spurious on

its face.  Loan agreements for hundreds of millions of dollars do not rely on "implied" provisions.  The details are explicitly agreed and carefully spelled out.  Equally suspect on its face is the argument that assignment is prohibited based on the "person-related" nature of the claims.  Reed Smith, LLP explain and draw reference to decided cases explaining how this applies to personal relationships like those between a mother and son (Paragraph (14)), not an ongoing banking relationship between sophisticated business entities.

Nassau Maritime should be allowed to credit bid.  The maritime cases cited by defendant dictate this result.  All allowed credit bidding, although some required a bond or cash for the amount of *custodia legis* expenses and liens of higher priority (there are no such liens here).  As noted in *Neptune Orient*, *supra*, a holder of a foreign mortgage must show only that the mortgage has been duly and validly executed and duly registered under applicable foreign law.  The holder is not required to prove the mortgage is valid under foreign law.  *Neptune Orient*, *supra*, at *7-8, citing *Mobile Marine Sales Ltd. v. M/V PRODROMOS*, 776 F.2d 85, 89 (3d Cir. 1985).

This is therefore a situation where Defendant does not dispute that it has not paid the loan agreement, and while it cursorily disputes the validity of the loan agreement, it has not filed a motion to vacate. The argument that the loan agreement is invalid is simply a last-ditch effort to delay collection of a valid, unpaid debt.

## V.    CONCLUSION

The Vessel's Owner has not and apparently will not or cannot secure the Vessel's release. The daily cost of maintaining the Vessel during her arrest is diminishing the proceeds that will be available from her ultimate sale and therefore is unnecessarily reducing the amount of money that will be available to satisfy the judgment in this case. In light of the foregoing, further delay in the sale of the Vessel is unwarranted, and an interlocutory sale is appropriate.

Nassau Maritime respectfully asks this Court to issue an Order directing the sale of the M/V PACIFIC SKY, her engines, tackle, appurtenances, furniture, rigging, etc., and that Plaintiff, Nassau Maritime, be permitted to credit bid its mortgage at the sale up to the amount of the unpaid balance on its Preferred Ship Mortgage. Plaintiff further respectfully requests all other relief to which it may be justly entitled.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:   */s/Kevin J. LaVie*
          Kevin LaVie (#14125)
          Email: kevin.lavie@phelps.com
          Adam Davis (#35740)
          Email: adam.davis@phelps.com
          Canal Place
          365 Canal Street • Suite 2000
          New Orleans, Louisiana 70130-6534
          Telephone: (504) 566-1311
          Facsimile: (504) 568-9130
          -and-
          Marc G. Matthews (admitted *pro hac vice*)
          Texas Bar No. 24055921
          Email: marc.matthews@phelps.com
          500 Dallas Street, Suite 1300
          Houston, Texas 77002
          Telephone: (713) 626-1386
          Facsimile: (713) 626-1388

          **ATTORNEYS FOR PLAINTIFF NASSAU MARITIME HOLDINGS DESIGNATED ACTIVITY COMPANY**