# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

**NASSAU MARITIME HOLDINGS
DESIGNATED ACTIVITY CO.**

**CASE NO.  2:20-CV-00355**

**VERSUS**

**JUDGE JAMES D. CAIN, JR.**

**M/V PACIFIC SKY, her engines, tackle,
appurtenances, etc.,** *in rem*, **and PACIFIC
SKY NAVIGATION LTD.,** *in personam*

**MAGISTRATE JUDGE KAY**

## MEMORANDUM ORDER

Before the court is a second Motion for Interlocutory Sale of Vessel [doc. 37] filed

by plaintiff Nassau Maritime Holdings Designated Activity Company ("Nassau") under

Rule E(9) of the Supplemental Rules for Admiralty or Maritime Claims & Asset Forfeiture

Actions of the Federal Rules of Civil Procedure. Defendant Pacific Sky Navigation, Ltd.

("Pacific Sky") opposes the motion. Doc. 52. Intervenor plaintiff Thome Ship Management

PTE Ltd. ("Thome") also opposes the motion in part. Doc. 53.

## I.
### BACKGROUND

Nassau filed suit in this court on March 19, 2020, raising claims against the M/V

PACIFIC SKY ("vessel") *in rem* and Pacific Sky, owner of the vessel, *in personam*. Doc.

1. Specifically, Nassau alleges the breach of a preferred ship mortgage and foreclosure of

a maritime lien against the vessel, with about $119.37 million due in principal under the

loan agreement and $4.87 million due in interest as of March 5, 2020.[1] *Id.* Pursuant to a court order, the vessel was arrested in this district on April 3, 2020. Doc. 12. Nassau filed a motion for interlocutory sale of the vessel on May 12, 2020. Doc. 24. Pacific Sky opposed the motion, asserting that it was still attempting to secure a bond for the ship's release. Doc. 26. The court denied interlocutory sale by ruling dated June 15, 2020. Doc. 31. There it noted that the vessel had only been under arrest for less than two and a half months at the time of decision and that the maintenance expenses accrued during this time were not excessive in light of the ship's total value. *Id.* The court allowed, however, that Nassau might reassert its motion if a bond was not secured in the next eight weeks or Nassau could otherwise show a change in relevant circumstances.

After that motion was denied, Thome Ship Management, LTE ("Thome") intervened in the action to assert its own maritime lien for pre-arrest necessaries, crew arrests, and post-arrest necessaries. Doc. 39. The court approved Thome's motion for issuance of warrant in rem, and a second warrant for the arrest of the M/V Pacific Sky was then issued on October 19, 2020. Doc. 51. Meanwhile, Nassau filed a second motion for interlocutory sale on September 28, 2020. Doc. 37. Here it requests that the court order sale of the M/V PACIFIC SKY and that Nassau be permitted to bid on credit up to the sum owed by Pacific Sky under the preferred ship mortgage. *Id.* Pacific Sky again opposes the motion, arguing that the conditions for interlocutory sale have not been met and that Nassau should not be allowed to credit-bid due to concerns about the validity of its claims. Doc.

---

[1] According to Pacific Sky, the loan secures five vessels including the M/V PACIFIC SKY. Doc. 26, att. 1, p. 1. Nassau has arrested three of the other vessels in ports in South Africa, Malaysia, and China. *Id.*

52, att. 1. Thome has filed a response, indicating that it does not oppose interlocutory sale but that it does oppose Nassau's request to make a credit bid. Doc. 53. In the alternative, it argues, the court should condition the credit bid on the posting of a bond valued at up to 150% of Thome's lien and the *custodia legis* expenses. *Id.*

## II.
## LAW & APPLICATION

### A. *Motion for Interlocutory Sale*

Under Rule E(9), interlocutory sale of a vessel is permitted upon application of a party, the marshal, or other person having custody of the vessel if: (1) the attached or arrested vessel is perishable or liable to deterioration, decay, or injury by being detained pending the action; (2) the expense of keeping the vessel is excessive or disproportionate; or (3) there is an unreasonable delay in securing release of the vessel. Fed. R. Civ. P. Supp. R. E(9)(a)(i). The movant bears the burden of showing that at least one of these criteria is met. *Triton Container Int'l Ltd. v. Baltic Shipping Co.*, 1995 WL 217483, at *2 (E.D. La. Apr. 12, 1995). The motion is committed to the court's discretion. *Prosperity Bank v. Tom's Marine and Salvage, LLC*, 2020 WL 777294, at *4 (E.D. La. Feb. 18, 2020).

In the instant motion Nassau argues that interlocutory sale is warranted because all three of the above conditions are met. As to the vessel's potential deterioration, Nassau asserts that the M/V PACIFIC SKY's steel construction is subject to decay as it sits idle in the Gulf of Mexico. Doc. 37, att. 1, p. 7. It also notes that the vessel has already had to

depart this district's waters to avoid damage from Hurricane Laura, and argues that future storms this season could create further dangers.[2] *Id.*

In response to the first motion for interlocutory sale, Pacific Sky provided a sworn declaration from its sole owner on this subject. The owner stated that the vessel currently had a full crew onboard "performing all the necessary maintenance to make sure the vessel remains in good condition" and that this crew can move the vessel to a safe berth in the event of a hurricane – which it has apparently done, as no additional damage was reported from Hurricane Laura. Doc. 26, att. 1, p. 4. In its opposition to this motion, Pacific Sky's owner has provided a second declaration averring that the vessel is fully staffed with a crew that can provide all maintenance and is experienced in moving vessels from perilous waters. Doc. 52, att. 1, p. 3. Furthermore, the court takes judicial notice of the fact that hurricane season for this year is at last drawing to a close and that the risk of severe storms like Hurricane Laura is decreasing as the waters of the Gulf of Mexico begin to cool. With Nassau having provided nothing to rebut these showings, there is insufficient evidence to support an interlocutory sale under the first factor.

Under the second factor, Nassau argues that the vessel requires excessive and ongoing custodial fees. To this end it shows that the expenses of maintaining the vessel currently average about $100,000/month, with an additional $150,000/month claimed by

---

[2] Nassau further argues that Pacific Sky has subjected the vessel to risk by allowing its hull and machinery insurance to lapse. Doc. 37, att. 1, p. 7. It admits, however, that it has taken out port risks insurance to protect against the same potential losses covered by hull and machinery insurance. *Id.* at 2–3. Accordingly, this issue has no bearing on the deterioration factor.

ship manager Thome for its own post-arrest costs.[3] Doc. 37, att. 1, pp. 5–6; *see* doc. 37, att. 2 (invoices); doc. 35 (intervenor complaint). Nassau asserts that these costs are excessive in light of the vessel's current estimated value of $20–24 million. *See* doc. 26, att. 1, p. 2. Under the third factor, Nassau also argues that there has been an unreasonable delay because the vessel was arrested over five months ago and Pacific Sky has not produced any evidence showing that it is likely to obtain financing soon. Doc. 37, att. 1, p. 5.

As the court noted in deciding the previous motion, "Maintenance expenses of several thousand dollars per month, particularly where Defendant has made no attempt to answer Plaintiff's Complaint or secure the Vessel's release, are excessive and disproportionate." *Bartell Hotels v. S/L Talus*, ___ F.Supp.3d ___, 2020 WL 1849544, at *3 (S.D. Cal. Apr. 13, 2020). However, "[a] motion for interlocutory sale generally should not be granted unless the court has permitted defendants sufficient time to provide a bond to secure the vessel's release." *Vineyard Bank v. M/Y Elizabeth I*, 2009 WL 799304, at *2 (S.D. Cal. Mar. 23, 2009). Absent other considerations, defendants usually have at least four months to bond out a vessel. *Id.* Slightly longer delays have also been found reasonable when the shipowner demonstrates active efforts to secure the release of the vessel. *E.g.*, *Samsun Logix Corp. v. Parkroad Corp.*, 2009 WL 268586, at *4 (W.D. La. Feb. 3, 2009) (citing *Boland Marine & Mfg. Co., LLC v. M/V A.G. Navajo*, 2002 WL 31654856, at *2 (E.D. La. Nov. 22, 2002)).

---

[3] Nassau further notes that Thome, the vessel's current manager, is claiming post-arrest costs of nearly $150,000/month. *See* doc. 35.

Pacific Sky admits that the vessel is incurring significant expenses but argues that Nassau should have anticipated these expenses when it had the M/V PACIFIC SKY and others secured under the loan arrested. Doc. 52, p. 10. It further maintains that no undue delay has occurred, in light of this year's peculiar circumstances arising from the COVID-19 pandemic. Doc. 52, pp. 11–13. Finally, Pacific Sky asserts that the parties are attempting to negotiate a commercial resolution and should know the outcome of these negotiations by the end of the year. *Id.* at 12. Because such a settlement could cap the arrest costs without resorting to interlocutory sale, Pacific Sky maintains that allowing the vessel to remain under arrest for another three months at an expense of $250,000/month is not excessive.

Given the mounting expenses, the court finds that neither the COVID-19 pandemic nor defendant's vague references to settlement discussion should excuse further delay in this matter. Even Pacific Sky's requested extension through the end of the year is unreasonable given the potential costs. Pacific Sky has now had nearly seven months since the vessel's arrest to secure financing or otherwise negotiate terms for its release. It shows no basis for extending this time, and the Motion for Interlocutory Sale will therefore be granted.

### B. *Request for Credit-Bidding*

Finally, Nassau requests that it be allowed to bid on credit of the sum allegedly owed by defendants under the preferred ship mortgage – which, Nassau asserts, currently runs to $119,366,178.14, plus four million and counting in attorney fees, costs, and interest. Doc. 37, att. 1, p. 9. This amount is secured by five vessels, four of which are under arrest. *See* note 1, supra. Thome opposes the motion on the grounds that its maritime lien claim and

ongoing *custodia legis* expenses should first be protected with a bond or other security, while Pacific Sky asserts that credit bidding should be denied because of questions about the mortgage's validity. Docs. 52, 53.

Credit bidding is a recognized practice in the Fifth Circuit for the holders of preferred mortgages. *Neptune Orient Lines Ltd. v. Halla*, 1998 WL 128993, at \*5 (E.D. La. Mar. 20, 1998) (collecting cases). There is no statutory right to this practice, and the court may impose conditions such as requiring a mortgagee to bid cash or post a bond. *Id.* (citing *Wong Shing v. M/V MARDINA TRADER*, 564 F.2d 1183, 1187 (5th Cir. 1977)); *Coastal Marine Mgmt. v. M/V SEA HUNTER (O.N. 598425)*, 274 F.Supp.3d 6, 8 (D. Mass. 2017). Generally, however, courts grant permission to credit bid to those with "preferred ship mortgages" who agree to pay any claim senior in priority. *M/V SEA HUNTER*, 274 F.Supp.3d at 8; *see also E.N. Bisson & Son, Inc. v. M/V BOUCHARD GIRLS*, __ F.Supp.3d ___, 2020 WL 5095331, at \*4 (E.D. La. Aug. 28, 2020).

Pacific Sky raises questions about the validity of the loan agreement, which is governed by German law and is the subject of ongoing litigation in Germany. Doc. 52, pp. 15–22; *see* doc. 52, atts. 3 & 4. It also argues that a successful credit bid means that it would be without recourse in the event that it prevails in the other litigation. Thome adopts these arguments. Doc. 53, p. 2. Additionally, Thome argues that credit bidding should be denied because of its own maritime lien. Doc. 54. Alternatively, it requests that a credit sale be conditioned on the posting of a bond in the amount of *custodia legis* expenses up to the time of the vessel's sale and other costs, plus interest. *Id.*

Both Pacific Sky and Nassau have provided declarations from German lawyers, staking out their respective positions. Doc. 37, att. 3; doc. 52, atts. 3 & 4. In sum, Pacific Sky argues that the transfer of rights under the loan agreement from Nassau's contractual predecessor to Nassau was invalid because on multiple bases, including an implied exclusion of assignment in the loan agreement and a breach of the contractual predecessor's duty of good faith. *See* doc. 53, atts. 3 & 4. Nassau maintains that there is no merit to Pacific Sky's claims. Nevertheless, the court will not resort to a mini-trial on these issues and instead recognizes the pending litigation as sufficient cause to deny credit-bidding in this matter. Accordingly, the court will not delve into Nassau's objections to the priority and validity of Thome's lien.

### III.
### CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that the Motion for Interlocutory Sale [doc. 37] be **GRANTED** as to the request for interlocutory sale and **DENIED** as to the request for credit billing. **IT IS FURTHER ORDERED** that plaintiff file into the record a proposed Order of Sale by **5:00 pm** on **Monday, November 9, 2020**.

**THUS DONE AND SIGNED** in Chambers on this 3rd day of November, 2020.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**